IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | |
|---|---|
| HENRY L. GUPTON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL O. LEAVITT, in his official ) <br> capacity as Secretary of the United States ) <br> Department of Health and Human ) <br> Services, ) <br> ) <br> Defendant. ) | No. 3:07-cv-185 |

## **MEMORANDUM OPINION**

This civil action is before the court on the parties' dispositive motions. The defendant has filed a "Motion to Dismiss, or in the Alternative, for Summary Judgment" [doc. 7], to which the plaintiff has responded and filed a cross motion for summary judgment [docs. 14 and 15]. The defendant has filed a response to the plaintiff's cross motion and a reply [doc. 18]. The court finds that oral argument is not necessary, and the motions are ripe for the court's consideration. For the reasons discussed below, the defendant's motion for summary judgment will be granted, and the plaintiff's cross motion for summary judgment will be denied.

## I. Background

### A. Procedural Background

On February 28, 2006, the plaintiff, Dr. Henry Gupton, was notified by the Office of the Inspector General for the United States Department of Health and Human Services ("DHHS") that he "was being excluded from participation in any capacity in Medicare, Medicaid, and **all** Federal health care programs . . . for the minimum statutory period of 5 years." A.R. at 63-64 (emphasis in original).[1] The exclusion was based on the plaintiff's "conviction" in Criminal Court, Anderson County, Tennessee, related to the delivery of an item or service under the Medicare or a state health care program. The plaintiff promptly requested a hearing before an administrative law judge who ruled in favor of DHHS and upheld the exclusion. A.R. at 1-7. The plaintiff appealed the ALJ's decision, and a three-member panel of the Appeals Board affirmed the exclusion. A.R. at 8-21. However, because the plaintiff had not been afforded oral argument before the three-member panel, the matter was reopened to allow oral argument. Following oral argument, the panel again upheld the plaintiff's exclusion. A.R. at 22-28. Thereafter, the plaintiff filed this civil action arguing that he has not been convicted of any crime and his constitutional rights have been violated.

---

[1] References to the Administrative Record will be designated "A.R." with the specific page numbers.

## B. Factual Background

Dr. Gupton, a medical doctor, practiced family medicine in Clinton, Tennessee, prior to his exclusion by DHHS. In his affidavit submitted to DHHS, Dr. Gupton stated:

> During the course of my practice at Clinton Family Physicians, I began to receive specific and repeated threats of violence against me and my family by a patient who sought to procure prescriptions for a controlled substance. This patient made me aware that he had access to various weapons and specifically referenced his expertise with explosives, military weaponry, and other incendiary devices on a number of occasions. On more than one occasion, this patient commented specifically on how some of these deadly weapons could harm me or my family, such as for example, booby trapping my car. There were occasions when the patient would wait for me to leave my office at night when no one else was around and threaten me in the parking lot. There were also other occasions when this patient would also follow me or my family during trips to and from our home and then tell me of our movements in order to intimidate me. During this time, my children were very young. As a result of these threats, I feared for my life and for the lives of my family members, including my wife and small children.

A.R. at 103. Dr. Gupton called the local police who told him that the threats could not be prosecuted, a fact that was verified by the Assistant District Attorney. Dr. Gupton finally gave into the threats and wrote prescriptions for Ritalin. The prescriptions were filled at a pharmacy reimbursed by TennCare, a state health care program.

Dr. Gupton was indicted by the Anderson County grand jury on eight counts related to TennCare fraud. His nolo contendere plea to one charge of attempted TennCare fraud was accepted (A.R. at 65), and the remaining counts were dismissed because the Assistant District Attorney believed the threats occurred and would support a duress defense to the charges. A.R. at 135-38. By agreement with the District Attorney's office and with approval from the state court, Dr. Gupton was placed on a sixty-day diversion. Dr. Gupton successfully completed the diversionary period, all charges were dismissed, and all records relating to the charges were expunged. A.R. at 33, 97-100.

### C. Relevant Statutory Provisions

The plaintiff was excluded from participation in federal health care programs pursuant to 42 U.S.C. § 1320a-7. The relevant parts of that statute are as follows:

> The Secretary shall exclude the following individuals and entities from participation in any Federal health care program (as defined in section 1320a-7b(f) of this title):
> . . . .
> Any individual or entity that has been convicted of a criminal offense related to the delivery of an item or service under subchapter XVIII of this chapter or under any State health care program.

42 U.S.C. § 1320a-7(a)(1).

> [I]n the case of an exclusion under subsection (a) of this section, the minimum period of exclusion shall be not less than five years . . . .

4

42 U.S.C. § 1320a-7(c)(3)(B).

> "Convicted" defined
> For purposes of subsections (a) and (b) of this section, an individual or entity is considered to have been "convicted" of a criminal offense –
> **(1)** when a judgment of conviction has been entered against the individual or entity by a Federal, State, or local court, regardless of whether there is an appeal pending or whether the judgment of conviction or other record relating to criminal conduct has been expunged;
> **(2)** when there has been a finding of guilt against the individual or entity by a Federal, State, or local court;
> **(3)** when a plea of guilty or nolo contendere by the individual or entity has been accepted by a Federal, State, or local court; or
> **(4)** when the individual or entity has entered into participation in a first offender, deferred adjudication, or other arrangement or program where judgment of conviction has been withheld.

42 U.S.C. § 1320a-7(i).

## II. Legal Discussion

The defendant seeks relief either under Federal Civil Procedure Rule 12(b)(6) (motion to dismiss) or Rule 56 (motion for summary judgment). The plaintiff seeks relief under Rule 56. The court finds that summary judgment is the appropriate avenue in this case because of the submission of four volumes of administrative record by the defendant. *See* Fed. R. Civ. P. 12(d) (if matters outside the pleadings are presented the motion should be treated as a motion for summary judgment).

5

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment may be granted, "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." There is no dispute about any material facts in this case; thus, the question before this court is whether either party is entitled to judgment based on the law and facts.

Pursuant to 42 U.S.C. § 405(g),[2] this court has jurisdiction to review the decision of DHHS to exclude Dr. Gupton from participation in federal and state health care programs. The Secretary's findings as to any fact are conclusive if supported by substantial evidence. *Id.* Substantial evidence is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401-02 (1971); *see also Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *Travers. v. Shalala*, 20 F.3d 993, 996 (9th Cir. 1994). The court must consider the administrative record as a whole, and if the decision is supported by substantial evidence, it must be affirmed even if the court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *Cutlip*, 25 F.3d at 286.

---

[2] Section 1320a-7(f) specifically incorporates the court's standard of review set out in 42 U.S.C. § 405(g).

The Secretary's initial determination that Dr. Gupton was convicted of an offense was upheld on appeal by the ALJ and the three-member Appeals Board. The ALJ held that the mandatory exclusion provisions of the statute apply to Dr. Gupton because he entered a nolo contendere plea that was accepted by the court (§ 1320a-7(i)(3)), and because he had entered into a deferred adjudication or other program where judgment of conviction was withheld (§ 1320a-7(i)(4)). Dr. Gupton's appeal of the ALJ's decision once again raised the issue of whether he was convicted of any offense because all the charges against him were dismissed and the records were expunged. He used a statutory construction argument to support his contention that he was not "convicted" within the meaning of the statute. The Appeals Board considered this argument in its original opinion and upon reconsideration following oral argument and upheld the ALJ's decision.

In his complaint filed in this court, Dr. Gupton raises four grounds for relief: (1) that the Secretary's interpretation of the term "convicted" was erroneous as a matter of law; (2) that under the facts of this case exclusion is a violation of his Eighth Amendment rights; (3) that exclusion violates his substantive Due Process rights under the Fifth Amendment; and (4) that exclusion is a violation of the Tenth Amendment because it interferes with the right of Tennessee to regulate the practice of medicine and to determine the effect of a conviction and expungement. Each of these grounds for relief has been thoroughly briefed by

7

the parties in their respective motions for summary judgment, and the court will consider each ground separately.

A.  Was Dr. Gupton "convicted" within the meaning of § 1320a-7(i)?

The Secretary determined that both the third and fourth definitions of "convicted" in the statute applied to Dr. Gupton, so the mandatory five-year exclusion was correctly applied to him.  Given the plain language of the definition, it would appear that this was a correct result.  Subsection (3) defines "convicted" as a situation where "a plea of guilty or **nolo contendere** . . . **has been accepted**."  In this case, Dr. Gupton pled nolo contendere to a reduced charge of TennCare fraud.[3]  A.R. at 65 (Gupton "waived his right to a jury trial and entered a plea of Nolo Contendere.  The Court accepts this plea to the offense of Attempted TennCare Fraud.").  Subsection (4) defines "convicted" as a situation where the individual "has entered into participation in a first offender, **deferred adjudication** . . . **or program where judgment has been withheld**."  Dr. Gupton entered into a deferred adjudication program as provided for in the Tennessee statutes.  A.R. at 65 (the court "ORDERS that further proceedings against the defendant, HENRY GUPTON, be deferred . . . .").

---

[3]  There is no dispute that the plea involved "the delivery of an item or service under . . . any State health care program."  42 U.S.C. 1320a-7(h); see A.R. at 25 (Ruling on Reconsideration, n. 2 ("Petitioner confirmed during oral argument that he does not argue that the offense involved was not 'related to the delivery of an item or service' under Medicare or a state health program.")).

8

Nevertheless, Dr. Gupton relies on a statutory interpretation argument to support his contention that neither subsection (3) nor (4) require the exclusion because any and all records of his nolo contendere plea have been expunged. He contends that the four definitions of "convicted" found in § 1320a-7(i) are mutually exclusive and, because expungement of records is only mentioned in subsection (1) as applying to a judgment of conviction, the effect of expungement of records in situations (3) and (4) would "matter." Dr. Gupton contends that the omission of the term "expunged" is to be presumed an intentional use of different language by Congress. The Appeals Board considered this argument, and its conclusions were as follows:

> It is undoubtedly a common principle of statutory construction that the plain language, if unambiguous, controls. It is indeed a common canon of construction that Congress should be presumed to act intentionally in its choice to use different words in otherwise parallel sections of a statute. We do not, however, agree with Petitioner that either concept applies to produce the interpretation he propounds.
>
> Petitioner's proposed reading of section [1320a-7(i)] is hardly compelled by the plain language. The plain language provides that a person is "convicted" for purposes of an exclusion whenever s/he has had a judgment of conviction entered against him/her or has been found guilty in court or has had a court accept a plea of guilty or nolo contendere or has entered into any program deferring or withholding judgment. As the ALJ found, Petitioner here has had a plea of nolo contendere accepted by a court, satisfying the plain language of subsection (3) and has also entered into an

> arrangement whereby judgment was deferred or
> withheld, satisfying the plain language of subsection (4).
>
> Petitioner's argument might, at best, create some
> ambiguity about the scope of those subsections which
> do not expressly address the situation of expungement.
> The logic of the argument would follow only if the same
> clause would be expected to appear in the other three
> subsections, absent an intention that expungement of
> records negate the existence of a conviction. It is
> entirely reasonable, however, to read the section as in
> essence specifying that conviction is to be understood
> very broadly as including even situations where the
> judgment has been expunged, where a finding of guilt or
> a plea of guilty or no contest has been accepted by a
> court . . . and where a diversion arrangement of some
> kind permits the person to avoid entry of judgment
> against them. . . . The expungement provision would
> logically be called for only to make clear that a final
> judgment will still constitute conviction for federal
> exclusion purposes even if expunged for state law
> purposes. The three other provisions deal with cases
> where no judgment may even have been entered so
> there is no need to specifically address what would
> happen if the criminal records were expunged.

A.R. at 16-17. The Appeals Board referred to the legislative history of the statute to support its interpretation and noted that the House Committee Report indicates that it was the Committee's intention that all instances of conviction, even those removed from the individual's criminal record, are included in the definition of "convicted." A.R. at 19 (citing H.R. Rep. No. 727, 99th Cong., 2d Sess. 75, reprinted in 1986 U.S.C.C.A.N 3607, 3665).[4]

---

[4] The court notes that page 18 of the Administrative Record is missing from the record filed with the court.

10

In his memorandum to this court, Dr. Gupton argues that the Secretary's interpretation of the statute is not entitled to "considerable weight or due deference" as claimed by the Secretary because the interpretation is fundamentally flawed. First, Dr. Gupton contends that the Secretary considered each definition of conviction in isolation. Dr. Gupton relies on two recent Supreme Court cases for the proposition that a "negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, ___, 126 S. Ct. 2749, 2765 (2006); *see also Burlington Northern & Santa Fe R.R. v. White*, 548 U.S. 53, 61-63 (2006) (finding that Congress's different words in a statute made a legal difference). However, in both of these cases, before applying the negative inference, the Court looked to the intent of Congress. *Hamadan*, at 2766; *White*, at 63.

In this case, the Secretary considered the legislative history to determine whether the omission of a reference to expungement in subsections (3) and (4) was deliberate. The Secretary found that the legislative history supported a conclusion that Congress intended that <u>any</u> admission by a medical provider that he or she had engaged in criminal conduct amounting to an abuse of a federal or state health care program would result in exclusion. *See* A.R. at 27 (citing to H.R. Rep. No. 727, 99th Cong., 2d Sess. 75, reprinted in 1986 U.S.C.C.A.N. 3607, 3665). The Secretary quoted from the House Committee

11

Report: "With respect to convictions that are 'expunged,' the Committee intends to include all instances of conviction which are removed from the criminal record of an individual for any reason other than the vacating of the conviction itself . . . ." *Id.*

This court agrees with the Secretary's interpretation of the statute and the conclusion that Dr. Gupton was "convicted." The legislative history makes clear that any admission by an individual that he or she has engaged in criminal abuse of a federal or state health care system will result in exclusion, whether an actual judgment of conviction has been entered or there is a conviction by guilty plea, nolo contendere plea, or participation in some type of deferral program. Further, it makes no difference whether the records have been expunged or not. It is the admission of a criminal act, that is, the conviction, that is important.[5]

The Secretary points out that it is Dr. Gupton who is trying to read language into the statute that is not there. Dr. Gupton would have the court add "unless the record is expunged" into the second, third and fourth definitions of "convicted." But, a person who has a judgment of conviction entered against him or who enters a guilty plea, a nolo contendere plea, or participates in a judicial diversion program has been found guilty of an offense, *see State v. Blanchard*,

---

[5] The court notes that expunged criminal offenses do not necessarily eliminate the criminal consequences for illegal aliens. *See* 8 U.S.C. § 1227(a)(2); *see also Ramos v. Gonzales*, 414 F.3d 800, 805-06 (7th Cir. 2005), *cert. denied*, 126 S. Ct. 1331 (2006).

100 S.W.3d 226,230 (Tenn. Ct. App. 2002), and it is the finding of guilt that triggers the exclusion from participation in the health care programs.[6]

Second, Dr. Gupton contends that the Secretary was "dead wrong" in saying that the term "expungement" does not need to be in subsections (2), (3), and (4). Whether one would not expect expungement to be mentioned in subsections (2), (3) or (4) does not matter. This court agrees with the Secretary that what matters is the guilty admission of the individual.[7]

The meager case law on the issue supports this finding. *See, e.g., Travers v. Shalala*, 20 F.3d 993, 996-98 (9th Cir. 1994); *Westin v. Shalala*, 845 F. Supp. 1446, 1451 (D. Kan. 1994) (finding that Westin's no contest plea and deferred judgment fall within the definition of "conviction"). In *Travers*, the plaintiff agreed to plead no contest to the charge of filing a false Medicaid claim and pay restitution, costs, and a civil penalty. If the payment was timely made, the Utah court would allow him to withdraw his plea and the charges would be dismissed. *Travers*, 20 F.3d at 995. The Ninth Circuit looked to the "substance of the proceedings, rather than any formal labels or characterizations used by the state or by the parties," and determined that Travers was "convicted" within the

---

[6] In Tennessee, for example, a guilty or nolo contendere plea are considered convictions and, in order to qualify for judicial diversion, the defendant must have entered one of these pleas. *See* Tenn. Code Ann. § 40-35-313.

[7] From this court's experience, individuals like Dr. Gupton are exactly the kind of persons who are likely to be eligible for judicial diversion and expungement of records. To accept his argument here would render the statute essentially toothless since all but the most fraudulent would avoid exclusion.

meaning of the statute. At issue was whether subsection (4) of the definition of conviction applied to the plaintiff. The court relied on the Secretary's argument that there is a distinction between "deferred adjudication" and "deferred prosecution." *Id.* at 997. A deferred adjudication is a conviction under § 1320a-7(i)(4), but a deferred prosecution is not. If a defendant enters into a deferred adjudication program and he fails to live up to the terms of the agreement, the defendant will not be free to set aside his plea or proceed to trial; rather, he is facing the entry of a judgment of conviction. But, with a deferred prosecution the prosecutor has agreed to delay bringing charges and there is no admission by the defendant of guilt. *Id.* If Travers had not made the necessary payments, his no contest plea would have been accepted and he would have proceeded to sentencing. *Id.*

The court finds that the Secretary's interpretation of the statute is supported by substantial evidence, especially the legislative history, and it will be affirmed. Dr. Gupton's nolo contendere plea was accepted by the court, § 1320a-7(i)(3), and he entered into a deferred adjudication program, § 1320a-7(i)(4). Thus he was "convicted" within the meaning of the statute.

The court finds that the Dr. Gupton's argument that the mandatory exclusion should not apply to his "conviction" is not well taken and summary judgment for the Secretary will be granted on this issue.

### B. Was exclusion a violation of the Eighth Amendment?

Dr. Gupton contends that the mandatory five-year exclusion violates the Excessive Fines Clause of the Eighth Amendment of the Constitution.[8] In response, the Secretary argues that exclusion is "remedial": that is, it is not punishment for an offense, and the exclusion is not grossly disproportionate to the gravity of the offense.

The limitations of the Excessive Fines Clause of the Eighth Amendment to the Constitution are applied only to fines "directly imposed by, and payable to, the government" and only to fines constituting punishment. *E.g., Austin v. United States*, 509 U.S. 602 (1993). There is no question that the exclusion was imposed by the government, so the remaining issue is whether the exclusion is a punitive or remedial sanction, or both. "It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties." *United States v. Halper*, 490 U.S. 435, 447 (1989).

The Appeals Board addressed this issue in its opinion when it considered the rationale for the different meanings of conviction in § 1320a-7(i). The Board stated:

---

[8] Neither party raises an issue of whether the exclusion from participation in federal Medicare and Medicaid programs is a "fine." For purposes of this discussion, the court will assume that the exclusion is a type of forfeiture of access to federal funds under these programs.

15

> The rationale for the different meanings of 'conviction' . . . follows from the distinct goals involved. The goals of criminal law generally involve punishment and rehabilitation of the offender, possibly deterrence of future misconduct by the same or other persons, and various public policy goals. Exclusions imposed by the I.G., by contrast, are civil sanctions, designed to protect the beneficiaries of health care programs and the federal fisc, and are thus remedial in nature rather than primarily punitive or deterrent.

A.R. at 14. This court agrees with the Secretary that the exclusion at issue in this case is remedial, and not subject to the Excessive Fines Clause of the Eighth Amendment.

Even if the exclusion has a punitive component, the court finds that the sanction is not "grossly disproportionate" to the gravity of the underlying offense. *E.g.*, *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) ("The amount of forfeiture must bear some relationship to the gravity of the offense that it is designed to punish."). Dr. Gupton seeks to compare the value of the prescriptions that were unnecessarily written by him ($427.44) to the income he is losing by not being able to participate in the federally funded health care programs for five years. This is not the balancing test. The value of the unnecessary prescriptions is not the issue; the result would be the same even if there was no monetary value to the prescriptions. Rather, balancing the protection of beneficiaries and the federal fisc against any potential loss of

income to Dr. Gupton shows that there is no disproportionate fine being imposed on Dr. Gupton by the exclusion.

The court finds that Dr. Gupton's Excessive Fines Clause issue is not well taken and summary judgment on this issue will be granted.

### C.  Was exclusion a violation of the Fifth Amendment?

Dr. Gupton contends that the five-year exclusion imposed on him should shock the conscience of the court because it is irrational.  The Secretary responds and says that it was not irrational to exclude the plaintiff from participation in federally funded health care programs after his nolo contendere plea to attempted health care fraud.

The court agrees with the Secretary.  There is no dispute that the plaintiff wrote medically unnecessary prescriptions for Ritalin, a Schedule III controlled substance (21 U.S.C. § 812), although under duress to do so.  Nevertheless, the prescriptions were written and filled and had the potential to injure the persons for whom the prescriptions were written.  This potential harm is sufficient to justify the statutory exclusion from further participation in federally funded health care programs, and the court finds that  Dr. Gupton's Due Process argument is not well taken.

### D.  Was exclusion a violation of the Tenth Amendment?

Finally, Dr. Gupton argues that his Tenth Amendment rights were violated when the Secretary interfered with the express goal of the State of

17

Tennessee, through its lawfully elected District Attorney and judicial officers, to resolve the criminal proceedings in a manner that he could continue to practice medicine in Clinton, Tennessee. Dr. Gupton argues that the State of Tennessee, like all states, regulates the practice of medicine and the exclusion interferes with Tennessee's regulation of the practice of medicine. The Secretary argues in response that Congress may determine who may participate in federally funded health care programs such as TennCare. The statute that provides for the exclusion of convicted persons like the plaintiff does not regulate the practice of medicine. The Secretary points out that Dr. Gupton still has his medical license and he can treat any patient who is able to pay for his services. The Secretary is not responsible for the exclusion imposed by private insurance companies.[9]

The court once again agrees with the Secretary that there is no Tenth Amendment violation and summary judgment on this issue will be granted.

### III. Conclusion

For the reasons stated above, the court finds that the Secretary is entitled to judgment as a matter of law on all of Dr. Gupton's claims, and summary judgment will be entered in favor of the Secretary. The plaintiff's motion

---

[9] According to Dr. Gupton, private insurers cancelled and/or suspended him from treating their patients solely on the bases of the Secretary's exclusion.

for summary judgment will be denied.  An order reflecting this opinion will be entered.

ENTER:

　　　*s/ Leon Jordan*　　　
United States District Judge